IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

AMBER O. J.,

      Plaintiff,

  v.            Civil Action No.
                6:19-CV-1280 (DEP)

ANDREW SAUL, Commissioner of the
Social Security Administration,

      Defendant.

---

APPEARANCES:        OF COUNSEL:

FOR PLAINTIFF

PETER M. MOBAICA, LLC    B. BROOKS BENSON, ESQ.
Attorneys at Law
2045 Genesee Street
Utica, NY 13501

FOR DEFENDANT

HON. ANTOINETTE L. BACON  NATASHA OELTJEN, ESQ.
Acting United States Attorney   Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

  Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on December 17, 2020, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Plaintiff's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

*[signature]*
David E. Peebles
U.S. Magistrate Judge

Dated:   December 22, 2020
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AMBER J.,
                                              Plaintiff,

-v-                                           6:19-CV-01280

COMMISSIONER OF SOCIAL SECURITY,

                                              Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
December 17, 2020
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    OFFICE OF PETER M. HOBAICA, LLC
    2045 Genesee Street
    Utica, New York 13501
    BY:  **B. BROOKS BENSON, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    J.F.K. Federal Building, Room 625
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY:  **NATASHA OELTJEN, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1           (The Court and all parties present by telephone.
2    Time noted:  11:21 a.m.)
3           THE COURT:  All right.  Let me begin by thanking you
4    both for excellent presentations.  I found them to be extremely
5    helpful, both your briefs and your oral presentations.
6           Plaintiff has commenced this proceeding pursuant to
7    42, United States Code, Sections 405(g) and 1383(c)(3) to
8    challenge an adverse determination by the Commissioner of Social
9    Security.
10          The background is as follows:  Plaintiff was born in
11   February of 1993.  She is currently 27 years old.  Plaintiff was
12   19 years of age at the alleged onset of her disability on
13   September 15, 2012.  Plaintiff stands 5'6" in height and weighs
14   approximately 140 pounds.  She resides in New York Mills or
15   Utica area in an apartment with her daughter who was born in
16   September of 2012 and is currently, by my calculations, eight
17   years of age.
18          Plaintiff grew up in various residential group home
19   and foster care settings since approximately age three.  She
20   spent a good deal of time in an establishment known as The House
21   of the Good Shepherd.  She was discharged from that facility on
22   her 18th birthday in February of 2011.  Plaintiff has a good
23   relationship with her maternal grandmother.  Her father is on
24   disability due to a traumatic brain injury that he suffered at a
25   very young age.  Her mother has been in and out of prison.

1    Plaintiff has an 11th grade education, but did not
2    achieve a GED.  Much of her education occurred at the Tilton
3    School at The Good Shepherd -- The House of the Good Shepherd.
4    Plaintiff was in regular mainstream classes, but mostly in small
5    group settings.  The indications are that her experiences
6    educationally were mixed.  She had fairly poor grades and had
7    behavior issues.  There is, however, at page 426, a report from
8    one of plaintiff's teachers dated June 25, 2009, that describes
9    plaintiff as respectful, helpful, and polite to staff.  It
10   indicates that she has been able to maintain friendships within
11   the classroom and she is viewed by other students as a role
12   model and a leader.
13           The plaintiff does not drive, but can use public
14   transportation according to her report to Dr. Mahler at page 393
15   of the Administrative Transcript.  Plaintiff has not worked
16   since November 21, 2015.  Plaintiff worked as a County worker
17   during the summers of 2009 and 2010.  She worked at a Friendly's
18   restaurant from May to October of 2011 and at an Old Navy store
19   from November 1, 2015, to November 21, 2015.  Plaintiff was
20   fired from both of those positions for excessive absenteeism.
21           Mentally, plaintiff suffers from major depressive
22   disorder, anxiety, posttraumatic stress disorder, panic attacks,
23   attention deficit disorder, attention deficit hyperactivity
24   disorder, generalized anxiety disorder, and a borderline
25   personality disorder.

1              Plaintiff was hospitalized for three days in June of
2    2011, four months after she turned 18, for cutting her wrists.
3    She was taken to the emergency room by her grandmother where it
4    was observed she suffered from depression, suicidal ideation,
5    and cutting behavior.  Her global assessment of functioning, or
6    GAF, score upon admission was 25.  Upon discharge, it was 55.
7    Plaintiff also presented at an emergency room on September -- in
8    September of 2016 according to 358 to 360 of the Administrative
9    Transcript, but she had a dispute with staff and left.  She also
10   presented at an emergency room in July of 2018 with a lacerated
11   finger resulting from her punching a mirror.  That's at 642 and
12   663 of the Administrative Transcript.  There was a report that
13   in 2018, plaintiff burned her boyfriend's clothes and smashed
14   windows.  That's at page 466.
15             Plaintiff does suffer from some physical impairments,
16   including lumbar back pain and somatic dysfunction.  Plaintiff's
17   healthcare providers include Nurse Practitioner Kathy Leach who
18   she sees for general issues.  She treated at The Neighborhood
19   Center, but was terminated for missed appointments.  She has
20   treated with Dr. David Stang, a licensed psychologist, since
21   April of 2018.  And she also saw a therapist, Kyle Mosack, but
22   was terminated from Therapist Mosack's treatment also for poor
23   attendance.
24             Plaintiff does not currently take any medications.
25   She has refused, according to 483 of the Administrative

1  Transcript.  In the past, she has been prescribed Zoloft, Prozac
2  or Fluoxetine, Paxil, Wellbutrin, and Concerta.
3           Plaintiff enjoys a wide range of activities of daily
4  living.  She is able to groom, bathe, and shower.  She can dress
5  herself.  She watches television, listens to the radio, manages
6  money, takes public transportation.  She has good social
7  relations with a limited -- although limited, and limited family
8  relationships.  She cares for her daughter daily.  She enjoys
9  dancing, singing, and scrap booking.  She can shop, cook, clean,
10 and do laundry.
11          Procedurally, plaintiff applied for Title XVI
12 benefits protectively on October 6, 2015.  She alleged a
13 disability onset date of September 15, 2012, which appears to
14 coincide with the birth of her daughter.  She claimed disability
15 based on depression, anxiety, PTSD, stress, and back issues at
16 page 196 of the Administrative Transcript.
17          Counsel, I would ask you to mute your phones, please.
18          A hearing was conducted on August 23, 2018, by
19 Administrative Law Judge Laureen Penn.  A prior hearing
20 scheduled for May 9, 2018, was adjourned in order to permit
21 plaintiff to obtain counsel.  ALJ Penn issued an unfavorable
22 decision on September 24, 2018.  That became a final
23 determination of the agency on August 12, 2019, when the Social
24 Security Administration Appeals Council denied plaintiff's
25 request for a review.  This action was commenced on October 16,

1   2019, and is timely.

2           In her decision, ALJ Penn applied the familiar
3   five-step sequential test for determining disability.  She found
4   at step one that plaintiff had not engaged in substantial
5   gainful activity since October 6, 2015.

6           At step two, the ALJ concluded that plaintiff does
7   suffer from severe impairments that impose more than minimal
8   limitations on her ability to perform work-related functions,
9   including unspecified depressive disorder, major depressive
10  disorder, unspecified anxiety disorder, generalized anxiety
11  disorder, panic disorder, attention deficit disorder, attention
12  deficit hyperactivity disorder, borderline personality disorder,
13  and PTSD.

14          Proceeding to step three, the ALJ concluded that
15  plaintiff's conditions do not meet or medically equal any of the
16  listed presumptively disabling conditions set forth in the
17  regulations, specifically considering listings 12.04, 12.06,
18  12.07, 12.08, 12.11, and 12.15.  The Administrative Law Judge
19  next concluded that plaintiff retains the residual functional
20  capacity, or RFC, to perform a full range of work at all
21  exertional levels with the limitation that she can perform
22  simple routine repetitive work in an environment with few, if
23  any, workplace changes and can occasionally interact with
24  supervisors, coworkers, and the public.

25          At step four, the Administrative Law Judge concluded

1  that plaintiff does not have any -- any significant past
2  relevant work that rose to a level of significant or SGA.
3          At step five, the Administrative Law Judge concluded
4  with the -- based on the testimony of a vocational expert who
5  was presented with a hypothetical that tracked or paralleled the
6  residual functional capacity finding, she concluded that
7  plaintiff is capable of performing work as a laundry worker, a
8  mailroom clerk, an inspector/hand packager (non-postal), and
9  shipping and receiving worker -- a weigher, I'm sorry, and,
10 therefore, she was not disabled at the relevant times.
11         The Court's function, as you know, is limited in this
12 case.  We apply an extremely deferential standard.  I must
13 determine whether correct legal principles were applied and the
14 resulting determination is supported by substantial evidence,
15 substantial evidence being defined to mean such relevant
16 evidence as a reasonable mind might accept as adequate to
17 support a conclusion.
18         The plaintiff in this case contends, first, that
19 there was an error at step three because there was no discussion
20 of, in particular, Dr. Stang's opinion, which would support a
21 finding that plaintiff could meet one of the listed impairments.
22 The plaintiff next contends that the treating source rule was
23 violated in connection with the evaluation of Dr. Stang's
24 medical source statement.  Third, she challenges the weighing of
25 her subjective complaints, what we used to call credibility.

1   And fourth, depending upon the earlier challenges, she claims
2   that the step five determination is infected since the RFC
3   determination is not supported by substantial evidence.
4           Turning first to the step three issue, the
5   Administrative Law Judge discussed the step three determination
6   at pages 14 through 16 of the Administrative Transcript.  She
7   considered, as I indicated previously, several of the 12 point
8   listings and concluded that none of them could be met because
9   plaintiff did not satisfy the so-called B criteria.  She
10  specifically found that in the domain of understanding,
11  remembering, or applying information that claimant has a
12  moderate limitation.  In the domain of interacting with others,
13  she also has a moderate limitation.  When it comes to
14  concentrating, persisting, and maintaining pace, she also found
15  a moderate limitation.  And in the fourth domain, adapting or
16  managing oneself, she also finds a moderate -- found a moderate
17  limitation.
18          It is, of course, plaintiff's burden at this and all
19  stages until step five, where the burden shifts to the
20  Commissioner, to establish her limitations.  And, of course, to
21  meet the listed criteria, the plaintiff must satisfy each and
22  every aspect or element of a listing, and that must be based on
23  acceptable clinical and laboratory diagnostic techniques,
24  *Brittany F. v. Social Security Administration*, 2020 WL 838076
25  from the Northern District of New York, February 19, 2020.

1           The Administrative Law Judge did not significantly
2  discuss Dr. Stang's opinion or Dr. Dipeolu's opinions in section
3  three.  There are cases that suggest that it is an error to fail
4  to explain the rejection of conflicting potentially supported
5  medical evidence that would show that a listing was satisfied,
6  *Brittany F.*, the case I just cited, and also *Briest*, 2010 --
7  it's *Briest v. Commissioner of Social Security*, I'm sorry, 2010
8  WL 5285307 from the Northern District of New York, December 17,
9  2020.
10          The -- as I indicated and will go into in more detail
11 in a moment, Dr. Stang's medical source statement would support
12 a finding of a listed -- of a listed disability.  He concludes
13 that plaintiff suffers from marked limitations in understanding
14 information, remembering information, applying information,
15 interacting with others, concentrating, persisting, maintaining
16 pace, adapting in the workplace, and managing oneself in the
17 workplace, that's at page 480, and there are other portions of
18 the medical source statement that would also potentially support
19 a finding that the B criteria could be met.  The -- so I think
20 there is an argument to be made that there is error at step
21 three of the Administrative Law Judge's sequential evaluation.
22 I would also cite *Flake v. Commissioner of Social Security*, 2016
23 WL 7017355 from the Northern District of New York, November 10,
24 2016.
25          I will say that this -- this opinion is not unlike

1  many that I've seen where a more robust fulsome discussion of
2  the medical evidence appears after the residual functional
3  capacity finding is set out and the B criteria discussion is
4  often very perfunctory, and there are cases that would suggest
5  that if there is a proper discussion of the medical evidence
6  later on in the -- in the Administrative Law Judge's
7  determination, then the failure at step three to make that
8  discussion would be harmless error.
9          The next function, of course, of the Administrative
10 Law Judge is to determine the plaintiff's residual functional
11 capacity.  An RFC represents a finding of the range of tasks a
12 plaintiff is capable of performing notwithstanding her
13 impairments.  The RFC determination is informed by consideration
14 of all of the relevant medical and other evidence.  The
15 determination of a plaintiff's RFC, of course, must be supported
16 by substantial evidence.
17         In this case, the ALJ determined a residual
18 functional capacity and, in doing so, heavily discounted the
19 opinion of Dr. David Stang, a licensed psychologist.  The
20 opinion of a treating physician regarding the nature and
21 severity of an impairment is entitled to considerable deference
22 provided that it is supported by medically acceptable clinical
23 and laboratory diagnostic techniques and is not inconsistent
24 with other substantial evidence.  If the opinion is contrary to
25 other substantial evidence in the record, including other

1   medical expert opinions, then the medical treating source
2   opinion is not controlling.  If it is not found to be
3   controlling, however, the Administrative Law Judge must
4   nonetheless consider the factors that are set out in the
5   regulations, and specifically as it relates to this case, 20
6   C.F.R. Section 416.927.  In this circuit they are sometimes
7   referred to as Burgess factors.  If the Burgess factors are not
8   specifically set out, the Second Circuit has noted in *Estrella*
9   *v. Berryhill*, 925 F.3d 90, Second Circuit, 2019, the
10  determination can still be upheld if a searching review of the
11  record convinces the Court that the treating source rule was not
12  violated.  Of course, when I refer to that regulation, I'm
13  referring to the former regulations that apply in this case
14  because this claimant's application was filed before March of
15  2017.
16          Dr. Stang began treating plaintiff in April of 2018.
17  His notes at page 11F of the Administrative Transcript show that
18  plaintiff underwent an initial evaluation on that date and that
19  plaintiff was subsequently seen by Dr. Stang on April 20, 2018,
20  May 1, 2018, May 22, 2018, June 14, 2018, July 14, 2018, and
21  August 3, 2018.  At the last session, it was agreed that the
22  frequency should be increased to weekly, so it's clear that Dr.
23  Stang qualifies as a treating source.  The treatment provided by
24  Dr. Stang was discussed by the Administrative Law Judge at page
25  19 of the Administrative Transcript and the opinion was

1  discussed at page 20 and given some weight.
2          The -- there's a question in my mind as to whether
3  the Burgess factors were applied. The -- the opinion is clearly
4  a check-the-box form. Although, there are differing
5  check-the-box forms, some of which are more comprehensive than
6  others. In this case, the form itself lists the diagnosis on
7  the first page, it lists signs and symptoms that are experienced
8  by the plaintiff as a result of her conditions on the second
9  page at 477, and it goes on to provide some detail on the third
10 page. It is determined in the opinion of this treating source
11 that the plaintiff cannot meet competitive standards in several
12 areas, including working in coordination with or proximity to
13 others without being unduly distracted, complete a normal
14 workday and workweek without interruptions from
15 psychologically-based symptoms, perform at a consistent pace
16 without an unreasonable number and length of rest periods,
17 accept instructions and respond appropriately to criticism from
18 supervisors, respond appropriately to changes in a routine work
19 setting, and has no useful ability to function in the area of
20 dealing with normal work stress. That's at page 478.
21         There is an explanation given. And in part, it
22 states that the plaintiff cannot handle normal work-related
23 stress without a high level of anxiety or sudden anger. The
24 opinion goes on at page 479 to conclude that plaintiff cannot
25 meet competitive standards in the area of understanding and

1  remembering detailed instructions, carrying out detailed
2  instructions, and has no useful ability to function in dealing
3  with stress of semiskilled and skilled work.  And, again, the
4  explanation given is that she cannot deal with the stress of
5  skilled or semiskilled work.  The form goes on to state that she
6  is unable to meet competitive standards in interacting
7  appropriately with the general public and has no useful ability
8  to function in the area of traveling in unfamiliar places and
9  using public transportation.
10           The next page, page 480, I've already remarked that
11 it contains an indication or opinion of a marked limitation in
12 many areas.  And finally, and significantly, the opinion given
13 states that plaintiff would be off task 25 percent or more of a
14 typical workday and would miss more than four days per month, an
15 opinion that is entirely consistent with plaintiff's proven
16 track record with both healthcare providers and her two jobs at
17 Old Navy and Friendly's.  Significantly, there is absolutely no
18 discussion in the Administrative Law Judge's decision concerning
19 off task and attendance and no explanation given as to why those
20 were apparently discounted and not included in the residual
21 functional capacity finding.  The -- and I find that that is
22 error.
23           I think the Administrative Law Judge did not discern
24 a couple of things.  First, the cyclical and up and down nature
25 of a mental health condition, which courts, including the Second

1  Circuit, have said need to be taken into account.  I recognize,
2  as the Commissioner has argued, that it is not fatal to fail to
3  specifically mention stress, and *Jennifer Lee W. v. Berryhill*,
4  2019 WL 1243759, certainly supports that.  Judge Stewart in that
5  case noted courts have routinely held that RFC determinations
6  can adequately account for a claimant's stress without
7  specifically referencing a stress limitation.
8           The problem with stress, though, is that it is unique
9  and highly individualized.  Social Security Ruling 85-15 relates
10 to stress and indicates in part the basic mental demands of
11 competitive or remunerative unskilled worked include the
12 abilities on a sustained basis to understand, carry out, and
13 remember simple instructions, to respond appropriately to
14 supervision, coworkers, and usual work situations and to deal
15 with changes in a routine work setting.  A substantial loss of
16 ability to maintain any of these basic work-related functions
17 would severely limit the potential occupational base.  It goes
18 on to address stress and mental illness and states, since mental
19 illness is defined and characterized by maladaptive behavior, it
20 is not unusual that the mentally impaired have difficulty
21 accommodating to the demands of work and work-like settings.
22 Determining whether these individuals would be able to adapt to
23 the demands or stress of the workplace is often extremely
24 difficult.
25           And the cases bear out that the response to the

Case 6:19-cv-01280-DEP   Document 18   Filed 12/22/20   Page 18 of 20

AMBER J. v. COMMISSIONER OF SOCIAL SECURITY                    15

1  stress of a workplace is highly individualized.  The -- there's
2  no discussion in this Administrative Law Judge's opinion as to
3  what causes the plaintiff's stress and, more significantly, what
4  the result is, but the record clearly indicates that she gets
5  angry, she has outbursts, she has -- there are multiple
6  occasions where she -- it physically manifested itself in
7  burning her boyfriend's clothes, smashing windows, punching at a
8  mirror.  In my view, because of the unique nature of this case
9  and specifically Dr. Stang's opinion, and even Dr. Mahler's
10 opinion that plaintiff was moderately limited in appropriately
11 dealing with stress, there should have been a more fulsome
12 discussion as to what triggers plaintiff's stress and how it's
13 accommodated by this residual functional capacity.
14          I know that plaintiff has raised issues concerning
15 the Administrative Law Judge's treatment of her subjective
16 statements of symptomology.  I'll note that it was based on
17 Social Security Ruling 96-7p, which, of course, has been
18 superseded by S.S.R. 16-3p, but since I have found error, I
19 don't -- I won't address that specifically.
20          The -- I find that the residual functional capacity
21 finding is flawed, the treating source rule was violated, and
22 there should have been a discussion of off task and absenteeism
23 and there was not, so the RFC is flawed.  The vocational
24 expert's testimony at step five, which hinges on the RFC, is not
25 sufficient to carry the Commissioner's burden of proof.  I don't

HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
Official U.S. Court Reporter

1  find persuasive evidence of disability.  I think this is a case
2  that needs a second look, and specifically at plaintiff's
3  ability or inability to deal with work-related stress.  I will
4  therefore grant judgment on the pleadings to the plaintiff and
5  remand the matter to the agency for additional consideration
6  without a directed finding of disability for proper
7  consideration of the medical evidence, including, but not
8  limited to, Dr. Stang's opinions.
9          Thank you both for excellent presentations.  Stay
10 safe and happy holidays.
11         MR. BENSON:  Happy holidays.  Thank you very much,
12 your Honor.  Thank you for your time.
13         MS. OELTJEN:  Thank you, your Honor.
14         (Time noted:  11:50 a.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR, Official U.S. Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 22nd day of December, 2020.

s/ Hannah F. Cavanaugh
HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
Official U.S. Court Reporter